**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERROL GILKES, | : | |
| **Plaintiff** | : | No. 1:19-cv-01627 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| US XPRESS, INC., | : | |
| **Defendant** | : | |
| | : | |

## MEMORANDUM

This case arises out of the termination of Plaintiff Errol Gilkes ("Plaintiff" or "Gilkes")'s

employment with Defendant U.S. Xpress, Inc. ("Defendant" or "USX") in February of 2019,

which Plaintiff alleges was due to age discrimination in violation of the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Pennsylvania Human Relations

Act ("PHRA"), 43 Pa. Stat. § 951 et seq.  (Doc. No. 1.)  Before the Court is Defendant's motion

for summary judgment.  (Doc. No. 21.)  For the reasons that follow, the Court will grant the

motion.

## I.    BACKGROUND[1]

Plaintiff filed a complaint in this Court on September 19, 2019, asserting claims against

Defendant for violations of the ADEA and PHRA.  (Doc. No. 22-1 ¶¶ 1-2.)  The substantive

allegations for each count relate to a single allegation—namely, that USX terminated Plaintiff's

employment as a truck driver because of Plaintiff's age.  (Id. ¶ 3.)  At the time of his termination,

---

[1] The following relevant facts of record are taken from Defendant's Statement of Undisputed
Facts ("SUMF") (Doc. No. 22-1), and Plaintiff's Answer to Statement of Facts ("ASMF") (Doc.
No. 29), and are undisputed unless otherwise noted.  Although the SUMF contains specific
citations to the record at each numbered paragraph, the ASMF does not consistently cite to
evidence in the record, but often labels certain averments "disputed" while relying only on
narrative responses and arguments.

Plaintiff was sixty-three (63) years old.  (Id.)  Defendant maintains that Plaintiff was terminated for an "unsatisfactory safety record that culminated in Plaintiff causing a preventable accident on February 14, 2019."  (Id. ¶ 4.)[2]

Plaintiff was hired by USX's predecessor, Arnold Transportation, in 1998 and became a USX employee in 2011.  (Id. ¶ 5.)  For most of his time with USX, Plaintiff appeared to have a good safety record, including induction into the Million Safe Miles Club in 2016, when Plaintiff was sixty (60), and the NER Driver of the Year Award in 2017.  (Id. ¶ 6.)[3]  Plaintiff received all of the above-referenced safe driver commendations prior to Defendant's implementation of a safety monitoring system known as DriveCam.  (Id. ¶ 7.)

Beginning in 2018, USX equipped every driver's truck with a DriveCam recorder camera.  (Id. ¶ 8.)  The camera faces out the windshield of a vehicle and the recording system is triggered by events such as speeding, following another vehicle too closely, and collisions.  (Id. ¶ 9.)  In the period between the installation and implementation of the DriveCam system in Plaintiff's truck on November 21, 2018 and Plaintiff's accident on February 14, 2019, Plaintiff had eighteen (18) days on which USX documented safety violations that triggered the DriveCam system, for a total of sixty-four (64) infractions.  (Id. ¶ 14.)[4]  During this period, Plaintiff was subjected to a variety of discipline, including verbal warnings, coaching events, and mandatory trainings.  (Id. ¶ 16.)  Most of the days with documented safety violations included more than

---

[2] Plaintiff asserts that Defendant's stated reason for termination is pretextual.  (Doc. No. 29 ¶ 4.)

[3] Plaintiff disputes Defendant's use of the phrase "what appeared to be" in connection with Plaintiff's safety record and maintains that Plaintiff always had a good safety record.  (Doc. No. 29 ¶ 6.)

[4] Plaintiff does not dispute the numbers provided by Defendant on this point, but disputes this paragraph "to the extent that Defendant implies that Plaintiff's accident was preventable or that these alleged infractions were terminable offenses."  (Doc. No. 29 ¶ 14.)

one safety violation, and most violations were for speeding, braking too late, and/or following another vehicle too closely.  (Id. ¶ 17.)

All USX drivers promise to adhere to company safety policies that instruct drivers to "avoid following other vehicles too closely."  (Id. ¶ 10.)  Further, the job description for USX drivers provides that drivers shall "obey all traffic laws, drive safely and with caution while operating a tractor and 53' trailer."  (Id. ¶ 12.)  The driver manual instructs drivers to drive at a safe following distance of no less than six (6) seconds and provides techniques for how to maintain a safe following distance.  (Id. ¶¶ 18, 20.)  Plaintiff was aware of these policies during his employment with USX.  (Id. ¶ 19.)

Defendant's position is that "Plaintiff's continued refusal to adhere to and practice strict safety and driving protocols resulted in a preventable accident on February 14, 2019" and that "[t]he accident Plaintiff caused is directly attributable to Plaintiff's unsafe driving practices that resulted in repeated notices, verbal warnings, and coaching events in the two-and-half months leading up to the accident: namely, following too closely."  (Id. ¶¶ 21-22.)[5]  The February 14, 2019 accident was captured on video.  (Id. ¶ 23.)  Plaintiff received a citation from the responding police officer for following too closely.  (Id. ¶ 24.)  Further, Plaintiff gave a contemporaneous statement to the USX Safety Control Department describing the accident as follows:

> V1 states traveling I-495 NB in heavy/slow traffic in lane 1/3 behind V2.  V1 states V2 suddenly braked and V1 front truck made contact with V2 rear vehicle. V1 states V2 was pushed into V3 rear.

---

[5] Plaintiff disputes, without citation to the record, that Plaintiff failed to practice strict safety and driving protocols, or that any such failure resulted in a preventable accident.  (Doc. No. 29 ¶ 21.) Plaintiff further asserts, relying solely on his own deposition testimony, that there exist genuine issues of material fact regarding whether Plaintiff was unsafe in driving or whether the February 14, 2019 accident was caused by any unsafe driving practices.  (Id. ¶ 22.)  Plaintiff argues that the accident was the result of icy roads that prevented him from stopping in time.  (Id.)

(Id. ¶ 25.)  The statement noted that the bumper of the truck was broken, that the hood cracked, and that the two other vehicles needed to be towed away from the scene.  (Id. ¶ 26.)

Alex Holland ("Holland") was the Field Safety Supervisor responsible for reviewing Plaintiff's crash and driving record and making a determination as to the preventability of the accident and whether Plaintiff's employment should be terminated.  (Id. ¶ 27.)  Holland's responsibilities as a Field Safety Supervisor included reviewing accidents to make preventability determinations as well as reviewing and coaching drivers regarding DriveCam events.  (Id. ¶ 29.) Holland generally made preventability determinations based on considering statements provided by the driver, video evidence, police reports, and the employee's driving record.  (Id. ¶ 33.) During his deposition, Holland testified that when a driver is involved in a preventable accident—defined as an accident that the driver could have avoided—the accident could result in probation or termination.  (Id. ¶ 34.)  In reviewing Plaintiff's accident, Holland reviewed Plaintiff's statement regarding the accident, the DriveCam video recording, Plaintiff's Driver Profile, which contains his disciplinary history, and the citation Plaintiff was issued by the responding police officer, ultimately determining that Plaintiff's accident was preventable.  (Id. ¶¶ 36-37.)[6]  David Tomshack, the Director of Safety, agreed with Holland's preventability determination.  (Id. ¶ 38.)

Defendant asserts that it is "clear from the video [of the accident] that Plaintiff was not allowing for the six seconds of following distance as is required—the same requirement regarding which Plaintiff was repeatedly coached in the months leading up to the crash."  (Id. ¶

---

[6] Plaintiff disputes that the accident was preventable, based solely on his own deposition testimony.  (Doc. No. 29 ¶¶ 4, 36.)

39.) (emphasis in original).[7]  Upon completing his review, Holland determined that the severity

of the accident coupled with Plaintiff's recent history of related safety violations warranted

termination.  (<u>Id.</u> ¶ 41.)[8]  USX had an internal process for appealing termination decisions;

however, Plaintiff chose not to appeal his termination.  (<u>Id.</u> ¶ 43.)

At his deposition, Plaintiff testified that "I feel that my age played a big factor in their

terminating me because, like I said, the accident that was not my fault, so what else could it be?"

(<u>Id.</u> ¶ 45.)  Plaintiff further testified that, during the course of his employment, he never heard

anyone refer to his age in any way.  (<u>Id.</u> ¶ 46.)  Defendant asserts that USX did not replace

Plaintiff with a significantly younger driver and has produced evidence that younger drivers were

not treated more favorably than Plaintiff.  (<u>Id.</u> ¶¶ 50-51.)[9]  Specifically, Defendant asserts that

USX terminated forty (40) truck drivers in the last three years for the same reasons Plaintiff was

terminated, and that "more than half of [those terminated] were under the age of forty, and

37.5% were between the age[s] of twenty and twenty-nine."  (<u>Id.</u> ¶ 52.)  As examples of

individuals who were terminated under similar circumstances to Plaintiff, <u>i.e.</u> terminated for an

---

[7] Plaintiff disputes that the accident was preventable.  (Doc. No. 29 ¶ 39.)  Plaintiff does not deny that the video shows that Plaintiff was not allowing for the required six seconds of following distance and does not cite any evidence in the record that would contradict Defendant's statement.  (<u>Id.</u>)

[8] Plaintiff once again does not dispute that this was the stated reason for termination, but disputes that the accident was preventable and asserts, with citation to the complaint only rather than any evidence in the record, that this was Plaintiff's first accident in over twenty (20) years of employment.  (Doc. No. 29 ¶ 41.)  The Court notes that any assertion that Plaintiff had never been involved in an accident is wholly unsupported by the record evidence, which indicates that Plaintiff was involved in several prior accidents, both preventable and non-preventable.  (Doc. No. 22-2 at 74-92, 129-30.)

[9] Plaintiff disputes Defendant's evidence of comparators based on the assertion that "[t]he issue of comparators is a question for the jury" but does not cite to the record to adduce any <u>facts</u>, as opposed to Plaintiff's narrative arguments, that would indicate any younger employees were treated more favorably than Plaintiff.  (Doc. No. 29 ¶¶ 51-58.)

unsatisfactory safety record following a preventable accident, Defendant names Brylee Johnson, David Hinton, Devin Migliore, Nicholas Prossers, and Ronnie Green, all of whom were between the ages of twenty-two (22) and twenty-six (26) at the time of their terminations.  (Id. ¶¶ 53-58.)

Defendant filed the instant motion for summary judgment on December 3, 2020.  (Doc. No. 21.)  After being granted several extensions of time to file a response (Doc. Nos. 24, 26, 30), Plaintiff filed his brief in opposition to Defendant's motion (Doc. No. 28) and Answer to Statement of Facts (Doc. No. 29) on January 21, 2021.  Defendant filed a brief in reply on February 4, 2021.  (Doc. No. 31.)  Accordingly, the motion has been fully briefed and is ripe for disposition.

## II.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  See id. at 251-52.  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  See A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364

F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of

evidence to support the non-moving party's claims, "the non-moving party must rebut the motion

with facts in the record and cannot rest solely on assertions made in the pleadings, legal

memoranda, or oral argument."  See Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d

Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the non-moving party

"fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden at trial," summary judgment is

warranted.  See Celotex, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the

non-moving party must provide, a court should grant a motion for summary judgment when the

non-movant's evidence is merely colorable, conclusory, or speculative.  See Anderson, 477 U.S.

at 249-50.  There must be more than a scintilla of evidence supporting the non-moving party and

more than some metaphysical doubt as to the material facts.  See id. at 252; see also Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Further, a party may not

defeat a motion for summary judgment with evidence that would not be admissible at trial.  See

Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III.   DISCUSSION

### A.   Legal Standard Applicable to Age Discrimination Claims[10]

Under the ADEA, an employer is prohibited from discharging or otherwise

discriminating against any individual "with respect to his compensation, terms, conditions, or

privileges or employment, because of such individual's age."  See 29 U.S.C. § 623(a)(1).  In

order to prevail on an ADEA claim, a plaintiff must establish that age was the "but-for" cause of

---

[10] The Court will not differentiate between Plaintiff's federal and state law age discrimination
claims because the same analysis applies to both.  See Simpson v. Kay Jewelers, 142 F.3d 639,
643-44 n.4 (3d Cir. 1998).

the adverse employment action at issue.  See Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78). A plaintiff can sustain a claim of discrimination under the ADEA by presenting either direct or circumstantial evidence of discrimination.  See Duffy v. Magic Paper Grp., Inc., 265 F.3d 163, 167 (3d Cir. 2001).  Where a plaintiff relies on circumstantial evidence, the Court reviews age discrimination claims pursuant to the three-part framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  See Willis, 808 F.3d at 644.

Under the McDonnell Douglas framework, a plaintiff bears the initial burden of establishing a prima facie case of discrimination.  See Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1997)).  When a plaintiff satisfies the elements of a prima facie case, that creates an "inference of unlawful discrimination."  See Willis, 808 F.3d at 644 (citing Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 357 (3d Cir. 1999)).  The elements of a prima facie case of age discrimination are: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive.  See Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013).  Where the plaintiff is not directly replaced, the fourth element may be satisfied if the plaintiff can provide facts which "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."  See Pivirotto, 191 F.3d at 352.

"Once the plaintiff has successfully established a prima facie case creating an inference of discrimination, the burden shifts to the employer who must 'articulate a legitimate, non-discriminatory reason for the adverse employment action.'"  See Willis, 808 F.3d at 644 (quoting

Jones v. Sch. Dist. of Phila., 198 F.3d 403, 412 (3d Cir. 1999)).  At this stage, the employer is not required to prove that the articulated legitimate, non-discriminatory reason was the actual reason for the adverse employment action, but need only provide evidence that would allow a factfinder to determine that the decision was made for non-discriminatory reasons.  See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  If the employer satisfies this prong, the burden shifts back to the plaintiff to show, by a preponderance of the evidence, that the employer's proffered non-discriminatory reason was pretextual.  See Burton, 707 F.3d at 726-27.  In order to survive summary judgment when an employer has articulated a legitimate, nondiscriminatory reason for its employment action, a plaintiff must adduce some evidence that would allow a factfinder to reasonably either "(1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  See Simpson, 142 F.3d at 644 (citing Fuentes, 32 F.3d at 764),

To establish pretext based on disbelief, a plaintiff's evidence must indicate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" to allow a factfinder to conclude that the employer's actions could not have been taken for non-discriminatory reasons.  See Fuentes, 32 F.3d at 759.  In the alternative, to establish pretext based on the argument that a discriminatory reason was "more likely than not a motivating or determinative cause," a plaintiff must present evidence "with sufficient probative force" to allow a factfinder to "conclude by a preponderance of the evidence that age was a motivating or determinative factor."  See Simpson, 142 F.3d at 644-45 (citing Keller, 130 F.3d at 1111)  Specifically, a plaintiff must point to evidence demonstrating that (1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly

situated, substantially younger individuals more favorably.  See Simpson, 142 F.3d at 645 (citing Fuentes, 32 F.3d at 765).

### B.      Arguments of the Parties

In arguing that it is entitled to summary judgment on Plaintiff's age discrimination claims, Defendant argues initially that Plaintiff  has failed to establish a prima facie case of age discrimination because "Plaintiff has failed to set forth any evidence that satisfies the second and fourth elements of his prima facie case."  (Doc. No. 22 at 9-10.)  As to the second element— Plaintiff's qualifications for the position from which he was terminated—Defendant argues that Plaintiff "is not qualified to drive a truck for Defendant, or any company" because "[t]here is not a more critical job qualification for a truck driver than the ability to drive safely and abide by the rules of the road and of one's employer."  (Id. at 10.)  More specifically, Defendant argues that "[w]ith the implementation of the DriveCam system in 2018, it became clear—in a documented way—that Plaintiff was not a safe driver and was not adhering to even the most basic safety expectations: not speeding and not following other drivers too closely."  (Id.) (emphasis in original)  Defendant argues that, despite repeated coaching on the issues of speeding and following too closely, Plaintiff nonetheless was involved in a crash with two other vehicles and was cited by the responding police officer for following too closely.  (Id. at 11.)  Accordingly, Defendant argues that "Plaintiff's failure to drive safely and refusal to improve his performance in response to repeated coaching—all of which led to a preventable accident—demonstrates that Plaintiff was not qualified for the job."  (Id.)

As to the fourth element of a prima facie case, Defendant argues that Plaintiff has adduced no evidence supporting an inference of discrimination.  Defendant first notes that it is undisputed that USX did not hire a younger truck driver to replace Plaintiff.  (Id. at 12.)  Next,

10

Defendant notes that Plaintiff has provided no evidence that that younger truck drivers were treated more favorably than Plaintiff.  (Id.)  Defendant argues that any assertion that younger employees were not terminated under similar circumstances to Plaintiff is "belied by the record evidence."  (Id. at 13.)  Specifically, Defendant notes that, over the last three years, it has terminated "forty drivers, including Plaintiff, for unsatisfactory safety records following a preventable crash" and that "more than 50% of those drivers [] were under the age of forty, and nearly 40% of those drivers were under the age of thirty."  (Id.)  Accordingly, Defendant argues that "[b]ecause Plaintiff has not presented evidence that creates an inference of illegal discrimination, he has failed to establish his prima facie case."  (Id. at 14.)

Further, Defendant maintains that, even assuming that Plaintiff could establish a prima facie case of discrimination, it had a legitimate, nondiscriminatory reason for Plaintiff's discharge, namely that "Plaintiff's employment was terminated because of his unsafe driving record that culminated in a preventable crash on February 14, 2019."  (Id. at 15.)  Specifically, Defendant notes that, following the accident, "USX engaged in a thorough review of the video of the crash, Plaintiff's statement immediately following the crash, the citation Plaintiff received from the responding police officer for following too closely, and Plaintiff's driving record that included a recent history of repeated safety violations."  (Id.)  Accordingly, Defendant argues it has satisfied its burden under the second prong of the McDonnell Douglas analysis.  (Id.)

Finally, Defendant argues that Plaintiff has offered no evidence to support a finding that Defendant's reason for terminating Plaintiff's employment was a pretext for discrimination.  (Id. at 16.)  Defendant argues that Plaintiff "cannot challenge USX's legitimate, nondiscriminatory reason for its employment decision by simply arguing that the decision 'was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer.'"

11

(Id.) (quoting Jones, 198 F.3d at 413.)  Defendant notes that it is undisputed that: (1) Plaintiff

was involved in a crash on February 14, 2019; (2) the video Defendant reviewed was a video of

Plaintiff's crash; (3) the two vehicles Plaintiff hit were towed from the scene; (4) the responding

police officer on the scene issued Plaintiff a citation for following too closely; (5) during the last

few months of 2018 and first few months of 2019, Plaintiff accrued repeated coaching events and

safety violations, including for speeding and following too closely; (6) this conduct was

prohibited by Defendant's safety policies; or (7) Plaintiff was unaware that noncompliance with

Defendant's safety policies could result in termination.  (Id. at 17-18.)  Defendant argues that

"Plaintiff has produced absolutely no evidence to suggest that the crash (when viewed together

with his safety record and citation) was not the real reason for his termination" and further

asserts that "[e]ven if USX made an incorrect determination about the preventability of

Plaintiff's accident, there is no evidence that Plaintiff's age motivated the decision to categorize

the accident as preventable."  (Id. at 18.)  Accordingly, Defendant argues that Plaintiff "has not

even, at minimum, demonstrated that his age played any role whatsoever in the decision to

terminate his employment, let alone a determinative one."  (Id. at 19.)

Notably, Plaintiff does not specifically respond to Defendant's arguments that he has not

established the second and fourth elements of a prima facie case for age discrimination.  (Doc.

No. 28 at 8.)  Rather, Plaintiff merely argues that "Plaintiff did not abandon his claim through his

deposition testimony"—an argument that Defendant never raised.  (Id. at 8-9.)  Further, Plaintiff

asserts, with respect to pretext, that "[a] reasonable jury could determine that the accident

involving Plaintiff was not preventable and, as such, the classification of the accident as

preventable was pretext for discrimination."  (Id. at 9.)  It is Plaintiff's position that the roads at

the time were icy due to snow the night before and that he was driving at twenty miles per hour

below the speed limit, but could not stop his truck in time.  (Id.)  Finally, Plaintiff argues that "Plaintiff has established pretext through evidence of comparators" because the comparators provided by Defendant "were not terminated for an isolated incident that occurred in poor weather conditions."  (Id. at 12.)  Relatedly, Plaintiff asserts, without citation to the record, that some potential comparators had other disciplinary issues[11] and that "Plaintiff had never received any previous disciplines before his termination."  (Id.)

### C.    Whether Defendant is Entitled to Summary Judgment on Plaintiff's Claims

As an initial matter, the Court need not resolve the question of whether Plaintiff has adequately demonstrated the second and fourth elements of a prima facie case of age discrimination, because even assuming that he has, and upon review of the briefs of the parties and the evidence of record, and construing all facts in the light most favorable to Plaintiff as the non-moving party, the Court concludes that Plaintiff has failed to produce sufficient evidence demonstrating that Defendant's legitimate, non-discriminatory reason for terminating his employment—namely, Plaintiff's unsatisfactory safety record throughout the end of 2018 and the beginning of 2019, culminating in an accident—was a pretext for discrimination.  As noted above, for Plaintiff's discrimination claim to survive summary judgment when his former employer articulates a legitimate, nondiscriminatory reason for its action, the burden shifts to Plaintiff  to demonstrate pretext by either "(i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse

---

[11] There is no evidence in the record that any non-safety related disciplinary concerns were considered by Defendant in choosing to terminate any potential comparator following a preventable accident.  Further, it is equally clear from the record that Plaintiff had a history of safety-related discipline, including verbal warnings, coaching events, and mandated training.

employment action." See Fuentes, 32 F.3d at 764.  In attempting to meet that burden, Plaintiff makes various arguments that he maintains are sufficient for a factfinder to reasonably either disbelieve Defendant's articulated reason for termination, or believe that a discriminatory reason was more likely than not a motivating or determinative cause of Defendant's action.  The Court addresses each in turn.

First, Plaintiff argues that there were categorically no safety concerns with his driving record because of his "long history of safe driving."  (Doc. No. 28 at 1, 3, 4, 12.)  However, this argument is clearly belied by the evidence of record which indicates that, subsequent to the implementation of the DashCam system, Plaintiff's driving resulted in sixty-four (64) safety violations on eighteen (18) days, for which he was repeatedly coached, received verbal warnings, or was required to complete additional trainings.  (Doc. No. 22-2 at 74-92.)  Plaintiff has pointed to no evidence of record suggesting that Defendant was required to ignore the recorded evidence of safety concerns with Plaintiff's driving in the months leading up to his termination in favor of only considering his prior, unrecorded history.  Further, this Court has previously determined that a plaintiff cannot establish pretext with evidence of positive history prior to the point at which employee performance fell below an employer's legitimate expectations.  See, e.g., Shade v. Alfa Laval Inc., No. 1:14-CV-813, 2017 WL 839456, at *12 (M.D. Pa. 2017) (finding that evidence of merit-based raises prior to a decline in performance could not establish pretext).

Next, Plaintiff argues, based solely on his own testimony, that his accident should not have been deemed preventable due to icy roads caused by bad weather and that the designation of the accident as preventable is itself evidence of pretext.  (Doc. No. 28 at 9-11.)  However: (1) weather reports from the area indicate that it did not snow the day of Plaintiff's accident, nor the

day before[12] (Doc. No. 32-1 at 1-9); (2) the video of the accident does not indicate any evidence

of ice or snow (Doc. No. 22-1 ¶ 23); (3) the responding police officer issued Plaintiff a citation

for following too closely and the citation makes no mention of inclement weather (Doc. No. 22-2

at 123-24); and (4) Plaintiff's own report at the time of the accident makes no mention of

inclement weather or hazardous road conditions (id. at 125-26).  Further, the evidence of record

indicates that Holland, who conducted the accident review and recommended Plaintiff's

termination, was not aware of Plaintiff's age at the time.  (Doc. No. 32-1 at 11-12.)  Regardless,

even if the Court were to credit Plaintiff's assertions that the accident was not preventable, it is

clearly established that a plaintiff "cannot simply show that an employer's decision was wrong or

mistaken" to establish pretext "since the factual dispute at issue is whether the discriminatory

animus motivated the employer, not whether the employer is wise, shrewd, prudent, or

competent."  See Abels v. DISH Network Serv., LLC, 507 F. App'x 179, 185 (3d Cir. 2012)

(citing Fuentes, 32 F.3d at 765).  In examining an ADEA claim, the Court does not "sit as a

super-personnel department that reexamines an entity's business decisions," but is tasked with

determining "whether a factfinder could reasonably find that the employer's stated reason is

unworthy of credence."  See Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 332 (3d Cir.

1995).

        Finally, Plaintiff contends that "many" of Defendant's comparators "were terminated for

incidents much more severe than driving twenty miles per hour below the speed limit on icy

roads and not being able to stop the vehicle and hitting a vehicle in front of him."  (Doc. No. 28

---

[12] The Court may take judicial notice of historical weather conditions.  See Easy Sportswear, Inc. v. Am. Econ. Ins. Co., No. 05-CV-01183, 2008 WL 2682689, at *1 (W.D. Pa. July 1, 2008) (noting that "historical weather conditions are not subject to reasonable dispute in that they are capable of accurate and ready determination").

at 4.)  This contention is unsupported by the record and, therefore, cannot properly be used to establish pretext.  See, e.g., Henson v. U.S. Foodservice, Inc., 588 F. App'x 121, 126 (3d Cir. 2014) (noting that claims unsupported by the record are insufficient as a matter of law to show pretext).  The record evidence indicates that more than half of the employees terminated by Defendant over the last three years for the same reasons as Plaintiff—an unsatisfactory safety record following a preventable accident—were under the age of forty.  (Doc. No. 22-1 ¶¶ 50-58; Doc. No. 22-2 at 131-154; Doc. No. 29-2.)  Viewing the record as a whole, and construing all facts in the light most favorable to Plaintiff, the Court finds no factual basis upon which a reasonable factfinder could either disbelieve Defendant's contention that Plaintiff was terminated for driver safety reasons or believe that a discriminatory reason was more likely than not a motivating or determinative cause of Defendant's decision to terminate Plaintiff's employment.  Accordingly, the Court will grant Defendant's motion for summary judgment.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court will grant Defendant's motion.  An appropriate Order follows.

16